UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| RALPH BAZE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 08-09-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| OFFICE OF THE ATTORNEY | ) | **MEMORANDUM OPINION** |
| GENERAL, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Ralph Baze is currently confined in the Kentucky State Prison located in Eddyville, Kentucky.  He has filed a *pro se* civil rights complaint asserting claims pursuant to 42 U.S.C. §1983.  Baze has also filed a motion to proceed *in forma pauperis* [Record No. 4], which the Court has addressed by separate Order.  The complaint is before the Court for initial screening.  28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).[1] For the reasons to be discussed below, the complaint will be dismissed.

I.      **BACKGROUND**

        A.      **State Court Proceedings**

---

[1]      This is a *pro se* complaint and is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  The allegations in a *pro se* complaint must be taken as true and construed in favor of the *pro se* litigant. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).  However, 28 U.S.C. § 1915(e)(2) permits a court to dismiss a case at any time if the court determines that the action is frivolous or malicious or fails to state a claim upon which relief can be granted.

On January 30, 1992, Baze shot Powell County Sheriff Steven Bennett and Powell County Deputy Sheriff Arthur Briscoe in the back as they attempted to arrest him pursuant to an outstanding multiple-felony arrest warrant. Baze was found guilty by a Rowan County jury of the charges relating to this incident and was sentenced to death. The Kentucky Supreme Court affirmed his conviction and sentence on direct appeal. *See Baze v. Commonwealth*, 965 S. W.2d 817 (Ky. 1997). The Kentucky Supreme Court also denied relief in three state post-conviction proceedings. *See Baze v. Commonwealth*, 23 S.W.3d 619 (Ky. 2000); *Baze v. Commonwealth*, 2006 WL 1360188 (Ky. 2006); and *Baze v. Commonwealth*, 2006 WL 1360281 (Ky. 2006).[2]

## B.    Habeas Corpus Proceedings

In 2001, Baze petitioned this Court for federal habeas relief pursuant to 28 U.S.C. § 2254. *See Baze v. Parker*, Civil Action No. 0: 01-00031. In the § 2254 petition, Baze asserted numerous due process challenges to his conviction. On September 23, 2002, this Court (Judge Wilhoit presiding) denied Baze's motion for an evidentiary hearing [*Id*., Record No. 35] and dismissed his § 2254 petition. [*Id*., Record No. 36] Baze appealed that decision. On June 9, 2004, the Sixth Circuit Court of Appeals affirmed the district court's denial of the § 2254 petition. *See Baze v. Parker*, 371 F.3d 310 (6th Cir. 2004).

## C.    Lethal Injection Challenges

Baze is currently on death row under the supervision of the Kentucky Department of Corrections ("KDOC"). On two occasions, Baze has attempted to challenge the legality of

---

[2]    The United States Supreme Court denied certiorari concerning all of the state court proceedings.

Kentucky's lethal injection method.  First, Baze attempted to intervene in an action filed by Brian Keith Moore, another death row inmate.  That action was filed in this Court on April 19, 2006, and involved a lethal injection challenge.  *See Moore v. Rees*, Civil Action No. 3: 06-00022.  In seeking to intervene in Moore's lethal injection challenge, Baze argued that the manner in which the Commonwealth of Kentucky applied lethal injection to death row inmates would subject him to cruel and unusual punishment.  He based his claim on the Eighth Amendment of the United States Constitution, which guarantees freedom from cruel and unusual punishment.  On September 25, 2007, this Court (Judge Karen Caldwell presiding) denied Baze's motion to intervene, finding that Baze was precluded from asserting his claims under the doctrines of *res judicata* and issue preclusion.  [*Id.*, Record No. 188] [3]

On May 22, 2007, Baze, along with two other death row inmates, filed a civil action in this Court, seeking, in part, a preliminary injunction to prevent the KDOC from executing them by lethal injection.[4]  *See Bowling, et al v. Haas, et al*., Civil Action No. 3: 07-00032.[5]  Baze argued that it would violate the Federal Controlled Substances Act, 21 U.S.C. §801 *et seq*., and

---

[3]     After extensive analysis, the Court explained that Baze had a prior opportunity to assert his challenge to Kentucky's lethal injection process in an earlier legal proceeding in the Franklin Circuit Court. The Court determined that because Baze had previously asserted his lethal injection challenge in the state court forum, he would not be allowed to do so in this Court.  Additionally, the Court rejected Baze's argument that the discovery aspects of the earlier state court litigation violated his right to due process of law.

[4]     During the pendency of this action, Baze notified the Court that the Kentucky Supreme Court granted oral argument on September 12, 2007, in three cases involving him, and issued an order staying his September 25, 2007 execution.  [*See* 3: 07-00032-KKC; Record No. 38].

[5]     Baze and the other death row plaintiffs initiated this action on January 23, 2007 in *Bowling et al. v. Haas, et al.*, Frankfort Civil Action No. 3: 07-0007-KKC.  Because the plaintiffs failed to demonstrate administrative exhaustion of their claims, the Court dismissed the action without prejudice on January 31, 2007.  [Record Nos. 8 and 9].  After completing the exhaustion process, the plaintiffs re-filed the action on May 22, 2007.

-3-

the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §301 *et seq*. if Kentucky carried out his

death sentence.  That action remains pending in this Court.

## II.    DISCUSSION

### A.    Claims and Defendants

Baze's present civil rights action filed pursuant to 42 U.S.C. § 1983 alleges claims against

numerous Defendant.  Specifically, Baze has asserted claims against twenty-eight various state

officials who were involved, in different capacities, in the judicial proceedings in which Baze

was convicted of  murdering two police officers.  Baze asserts in a lengthy complaint that the

Defendants violated his Fourth Amendment due process and equal protection rights.  Generally,

he alleges that he was maliciously prosecuted and that the Defendants unreasonably violated his

Fourth Amendment rights by engaging in unreasonable search and seizure at the time of his

arrest.  For purposes of discussion, the Court has grouped the Defendants into the following

categories: (1) the "Attorney General Defendants;"[6] (2) the "Kentucky State Police

---

[6]      This category includes: (1) the Office of the Attorney General, Jack Conway, Attorney General; (2) Albert B. Chandler, III, former Attorney General of Kentucky; (3) Gregory Stumbo, former Attorney General of Kentucky; (4) David A. Smith, Assistant Attorney General; (5) Brian T. Judy, Assistant Attorney General; and (6) Paul D. Gilbert, Assistant Attorney General.

-4-

Defendants;"[7] (3) the "Appellate Judicial Defendants;"[8] (4) the trial judge;[9] (5) the "Prosecutorial Defendants;"[10] and (6) the "City and County Defendants."[11]

In the current action, Baze alleges that the Attorney General Defendants: (1) twisted or misrepresented trial testimony on behalf of the Commonwealth of Kentucky; (2) submitted false material facts during the appellate briefing and oral argument processes; (3) concealed and destroyed evidence favorable to Baze; (4) fabricated inculpatory evidence (5) intimidated and threatened Baze's wife, Becky Baze; (6) suborned perjury of Commonwealth of Kentucky witnesses; (7) engaged in a conspiracy with other state actors to deprive him of due process of law; (8) prematurely sought a death warrant while Baze's appeals were pending; (9) ignored criminal complaints filed against staff attorneys employed by the Kentucky Attorney General; (10) concealed the alleged misconduct of staff attorneys; (11) failed to train employees; and (12)

---

[7]      This category includes:  (1)  the Department of Kentucky State Police; (2)  Billy G. Wellman, former Commissioner, Kentucky State Police;  (3) Robert Motley, Detective, Kentucky State Police; and (4) Larry Patterson, Detective, Kentucky State Police.

[8]      This category includes: (1) the Office(s) of the Kentucky Supreme Court,  Districts 1, 2, 3, 4, 6; (2) the late Donald C. Wintershiemer, former Kentucky Supreme Court Justice; (3) Martin E. Johnstone, former Kentucky Supreme Court Justice; (4) William S. Cooper, former Kentucky Supreme Court Justice; (5) Joseph E. Lambert, Chief Justice, Kentucky Supreme Court; and (6) J. William Graves, former Kentucky Supreme Court Justice.

[9]      This category includes: (1) Judge William Mains, the current Judge of the 21st Judicial District, who presided over the Plaintiff's murder trial; (2) the Office of the 21st Judicial District; and (3) the Office of the 39th Judicial District.

[10]      This category includes: (1) Michael Stidham, former Commonwealth Attorney for Powell County, Kentucky ; and (2) Richard Fain, Assistant Commonwealth Attorney for Powell County, Kentucky.

[11]      This category includes: (1) Powell County Kentucky; (2) the Powell County Sheriff's Department; (3) the City of Stanton, Kentucky; (4) the Stanton City Police Department;  (5) the City of Clay, Kentucky; (6) the Clay City Police Department; and (7) Ray Ashley, Clay City Police Officer.

misrepresented facts about the status of his case, and the expiration of his appeal right to the media.

Baze alleges that Kentucky State Police Defendants: (1) ignored a letter which he (Baze) wrote to former President George H. W. Bush on April 17, 1992, in which he complained about the Kentucky State Police's alleged failure to investigate exculpatory evidence; (2) concealed exculpatory evidence relating to the rifle(s) used in the murders; and (3) concealed the names of witnesses who would give exculpatory evidence or testimony at Baze's murder trial.

Baze alleges that the Appellate Judicial Defendants: (1) engaged in a conspiracy and an unwritten policy of acting outside of the law in order to uphold criminal convictions; (2) discriminated against him on grounds which were not specified; (3) hindered the federal courts from hearing a complete and honest representation of the facts of his case; (4) demonstrated bias and prejudice toward him; (5) twisted and falsified issues and adopted "lies" advanced by the Attorney General's office; (6) ignored their duty to report attorney misconduct; (7) ignored the Attorney General's actions of putting false and misleading material facts into the record; and (8) acted with the specific intent to ensure his (Baze's) "murder" by affirming his murder convictions and death sentence.

Baze alleges that the trial judge, Powell Circuit Judge William B. Mains, violated his due process rights in various ways. Baze complains that Mains: (1) improperly allowed him to be tried in another county pursuant to more than one change of venue motion; (2) failed to report professional misconduct by the prosecutors from the Commonwealth Attorney's office; (3) rendered unfavorable rulings both before and during the trial; and (4) allowed the prosecutors

to make false and misleading statements to the jury; and (5) failed to give the jury proper admonitions.

Baze alleges that the Prosecutorial Defendants: (1) ignored discovery orders during the murder trial; (2) refused to preserve and produce handwritten notes of the police officers who were at the scene of the shooting; (3) prosecuted him outside of the proper jurisdiction; (4) failed to investigate the possibility that another gun was used in the shooting; (5) allowed prosecution witnesses to lie; and (6) lied and/or misrepresented relevant facts in closing arguments to the jury.

Finally, Baze alleges that the City and County Defendants failed to properly train law enforcement officers who arrived at the scene of the shooting and unreasonably searched his cabin and unreasonably seized him at the time of his arrest.

### B.   Analysis

### (1)   This action is barred by the *Rooker-Feldman* Doctrine.

Although Baze has asserted claims pursuant to 42 U.S.C. § 1983, it is apparent that he is attempting to use this proceeding to again collaterally challenge his murder conviction and death sentence. Baze repeatedly refers to his murder conviction and death sentence, claiming that they are the result of malicious prosecution (in both the jury trial and the appellate process), fraud and conspiracy. In his Complaint, Baze seeks damages in excess of $100,000,000. He also seeks a declaratory judgment from the Court stating that the Defendants violated his due process and equal protection rights under the United States Constitution.

Under the *Rooker-Feldman* doctrine, a federal district court may not hear an appeal of a case already litigated in state court.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).  A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States.[12]  *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) (citing *Feldman*, 460 U.S. at 476); *Rooker*, 263 U.S. 413.  This principle applies with respect to claims brought pursuant to § 1983, "since federal courts must give 'full faith and credit' to the judicial proceedings of state courts."  *Gottfried v. Medical Planning Servs., Inc.*, 142 F.3d 326, 330 (6th Cir. 1998), *cert. denied*, 525 U.S. 1041 (1998).

Because Baze's § 1983 and alleged "conspiracy" claims are essentially collateral attacks on his state court murder conviction, the Court, under the *Rooker-Feldman* doctrine, lacks subject matter jurisdiction to entertain these claims.  Baze cannot invoke federal jurisdiction by couching his claims in terms of a civil rights action.  *See Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993), *cert. denied*, 510 U.S. 1046 (1994).  Further, because Baze's demand for damages in this action is inextricably intertwined with the his state court murder conviction, this Court also lacks jurisdiction to review that claim under the *Rooker-Feldman*

### (2)    This action is barred under *Heck v. Humphrey*.

This action must also be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994).  The history of Baze's state and federal court proceedings reveal that his conviction and sentence remain valid.  Notably, Baze's numerous state court appeals and federal habeas challenges have

---

[12]    The United States Supreme Court is the only federal court with jurisdiction to correct state court judgments.  *Feldman*, 460 U.S. at 482.

not resulted in his conviction being reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus. *See* 28 U.S.C. § 2254. In

*Heck*, the Supreme Court held that:

> to recover damages for allegedly unconstitutional conviction or imprisonment, or
> for other harm caused by actions whose unlawfulness would render a conviction
> or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence
> has been reversed on direct appeal, expunged by executive order, declared invalid
> by a state tribunal authorized to make such determination, or called into question
> by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. **A
> claim for damages bearing that relationship to a conviction or sentence that
> has not been so invalidated is not cognizable under § 1983.** Thus, when a state
> prisoner seeks damages in a §1983 suit, the district court must consider whether
> a judgment in favor of the plaintiff would necessarily imply the invalidity of his
> conviction or sentence; if it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or sentence has already been
> invalidated.

*Heck*, 512 U.S. at 477 (emphasis added). This has been called the "favorable termination rule."

As previously noted, Baze is attempting to use the present action to re-litigate every aspect of

his murder conviction. However, because a court has not found his murder conviction to be

illegal, Baze cannot seek damages for his criminal conviction through a civil rights action. A

finding in favor of Baze on any of his §1983 claims would "necessarily imply the invalidity of

his conviction" for murder. *Heck*, 512 U.S. at 487. Therefore, according to the Supreme Court's

decision in *Heck*, he cannot seek damages for a lawful criminal conviction through this action.

*See Heck*, 512 U.S. at 486-87; *Ruff v. Runyon*, 258 F.3d 389 (6th Cir. 2001) (claim for malicious

prosecution did not accrue until criminal charges were dismissed); *Shamaeizadeh v. Cunigan*,

182 F.3d 391 (6th Cir. 1999); *Hermansen v. Chandler*, 2000 WL 554058, at *2 (6th Cir. Apr.28,

2000); *Akers v. Bishop*, 65 F. App'x. 953 (6th Cir. 2003); and *Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994).

### (3)   Other Grounds for Dismissal

The primary reasons for dismissal of this action is the effect of both the *Rooker-Feldman* and *Heck v. Humphrey* doctrines. However, there are additional reasons for dismissal of various claims against certain Defendants.

### a.   Judicial Immunity

First, the trial judge and the Appellate Judicial Defendants are immune from suit based on the doctrine of judicial immunity. Generally, judges are absolutely immune from suit under §1983 if the complained-of act was not taken in the clear absence of all jurisdiction, and if the complained-of act was a judicial act (*i.e.*, the function was normally one performed by a judge and the parties dealt with the judge in his judicial capacity). *See Pierson v. Ray*, 386 U.S. 547, 553-555 (1967); *see also Stump v. Sparkman*, 435 U.S. 349, 356-362 (1978). Absolute judicial immunity exists for "those acts which are truly judicial acts. . . ." *Morrison v. Lipscomb*, 877 F.2d 463, 467-68 (6th Cir. 1989) (citing *Forrester v. White,* 484 U.S. 219 (1988)), and is not diminished even if the judge's exercise of authority is flawed or is in error. *Stump*, 435 U.S. at 359. "[A]bsolute immunity is not available if the alleged wrongful conduct was committed pursuant to a non-judicial act, *i.e.*, one not taken in the judge's judicial capacity, such as terminating an employee." *Cameron v. Seitz*, 38 F.3d 264, 272 (6th Cir. 1994) (citing *Forrester*, 484 U.S. at 229-30.

-10-

In *Stump*, the Supreme Court established a two-prong test to determine whether an act is "judicial." *Stump,* 435 U.S. at 362. First, the court must consider whether the acts in question were functions that are "normally performed by a judge." *Id*. The Sixth Circuit has previously referred to this inquiry as the functional approach. Under this inquiry, a court is required to examine the nature and function of the act, not the act itself. The Supreme Court reformulated this inquiry in *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), holding that even if a particular act is not a function normally performed by a judge, the court must look to the particular act's relation to a general function normally performed by a judge. *Id*. at 13. Second, in determining whether an act is "judicial," the Court must assess whether the parties dealt with the judge in their judicial capacity. *Id*. at 12. In examining the functions normally performed by a judge, the Sixth Circuit has explained that "paradigmatic judicial acts," or acts that involve resolving disputes between parties who have invoked the jurisdiction of a court are the touchstone for application of judicial immunity. *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir.1997). Conversely, whenever an action taken by a judge is not an adjudication between the parties, it is less likely that it will be deemed judicial. *Cameron*, 38 F.3d at 271.

Here, Baze specifically complains about actions taken by these Defendants in their judicial capacities. With respect to the trial judge, Baze takes issue with various adverse rulings he made during trial. He also complains that the trial judge failed to prohibit the prosecutors from making " false and misleading" statements to the jury and failed to properly admonish the jury. Additionally, he claims that Appellate Judicial Defendants erred in upholding his murder conviction. In particular, he contends that these Defendants misconstrued witness testimony,

-11-

engaged in a "conspiracy" with other defendants, misconstrued material facts, and allowed the Attorney General Defendants to advance "lies."  While Baze alleges that their conduct was "fraudulent" and "malicious," he has failed to allege facts to support these claims.  In fact, the record reflects that these Defendants simply rendered rulings adverse to his interests.  A judge's rulings on motions, even if they are detrimental to a litigant's case, constitute judicial action and are thus protected by judicial immunity.  *Stump*, 485 U.S. at 363 (disagreement with action taken by judge does not deprive him of judicial immunity); *see also Clark v. Taylor*, 627 F.2d 284 (D.C. Cir. 1980).  Because the complaint fails to allege that these Defendants either acted outside of their roles as judges or performed non-judicial acts, absolute judicial immunity bars Baze's claims against them.

### b.     Prosecutorial Immunity

Baze's claims against the Prosecutorial Defendants are also barred.  In broad terms, Baze's claims against the Prosecutorial Defendants relate to their conduct in their role as advocates.  Specifically, Baze objects to various arguments they raised during pre-trial and trial hearings, decisions they made regarding the evidence to present at trial, and decisions they made regarding the witnesses to call at trial.  Additionally, he objects to the Attorney General Defendants' characterization of legal arguments and witness testimony on appeal.  To the extent the Prosecutorial Defendants and the Attorney General Defendants were acting in their roles as advocates, *i.e.*, initiating and pursuing a criminal prosecution and presenting the Commonwealth of Kentucky's case at trial and on appeal), they enjoy absolute prosecutorial immunity.[13] *Imbler*

---

[13]     Former Attorney General Greg Stumbo would not be entitled to absolute immunity on the claim against him for statements allegedly made by him to the press relating to Baze's death sentence.  In general,

-12-

*v. Patchman*, 424 U.S. 409 (1976); *see also Grant v. Hollenbach*, 870 F.2d 1135 (6th Cir. 1989) (prosecutors were absolutely immune from claim alleging that they conspired to knowingly bring false charges despite claims of failure to investigate facts and alleged commission of perjury before the grand jury).

### III.   CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** as follows:

1.      Baze's claims against all Defendants are **DISMISSED**, with prejudice.

2.      Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of all Defendants herein.

This 3rd day of April, 2008.



Signed By:

*Danny C. Reeves*

United States District Judge

---

a prosecutor's statements to the press are only protected by qualified immunity. *Buckley*, 509 U.S. at 277-78; *Schrob v. Catterson*, 984 F.2d 1402, 1420 (3rd Cir. 1991). In some instances, the Court may be inclined to issue summons with respect to this type of claim. However, this type of action is not warranted here inasmuch as the Court has already determined that all of Baze's claims are barred by the *Rooker-Feldman* and *Heck v. Humphrey* doctrines.